HYSMITH *v.* MILLS.

Opinion delivered March 15, 1920.

LANDLORD AND TENANT—LEASE—CONSTRUCTION.—A lease which speci-
fied no term but gave the lessee the right to make repairs costing
$300 at the lessor's expense, to be repaid out of the rent at the
rate of $5 a month, and provided that if the lessor terminated the
lease before the repairs were repaid he should pay the balance
due, but if the lessee quit he should forfeit the right to payment,
created a tenancy for five years, and not from month to month.

· Appeal from Woodruff Circuit Court, Southern Dis-
trict; *J. M. Jackson,* Judge; affirmed.

*Jonas F. Dyson,* for appellant.

The court erred in sustaining the demurrer. The
suit was brought under Kirby's Digest, section 3651. No
bond or affidavit was required. The facts stated in the
complaint stated a cause of action under the statute. 36
Ark. 518. Appellants are entitled to judgment for dou-
ble rent from March, 1919. 105 Ark. 128.

*Roy D. Campbell,* for appellee.

A sale of leased property can not terminate a lease
contract unless it is so stipulated in the lease. 95 Ark.
147. There is no such stipulation in this case. The rule
is that the tenant is favored and not the landlord. 36 Ark.
518 does not apply. R. C. L. 188. "Sufficient cause" or
"cause" means legal cause. 187 Fed. 418; 39 N. J. L. 14;
96 Md. 232; 127 Ark. 113; 123 *Id.* 480. The judgment is
right and should be affirmed.

SMITH, J. The decision in this case turns upon the
construction to be given the following contract:

"This agreement to lease made and entered into this
the 1st day of January, 1917, by and between W. R. Cain,
hereinafter known as lessor, and R. E. Mills, hereinafter
known and spoken of as lessee, *witnesseth:·*

"That the said lessor, hereby leases, demises and
rents to the said lessee a certain store house situated on
the north side of Main street in the town of Cotton Plant,

Arkansas, said store house being a second door from the corner of Main street and Central avenue of Cotton Plant, Arkansas, and being the store building now occupied by and heretofore occupied and leased by the said lessee herein.

"The lessee agrees to pay a monthly rental of $35 per month for said building. The sum of $30 to be paid in cash in advance each month and the sum of $5 to be credited to the lessee as hereinafter set out after any improvements on said building made by said lessee. Before any repair hereinafter provided for shall have been made and after said repairs, alterations or changes or improvements shall have been paid for as hereinafter set out at the rate of $5 per month, the said lessee shall pay the said stipulated monthly rental of $35 per month in advance. It is agreed that the lessee may make such repairs to said building and add such fixtures as he may desire and the same shall be made at the expense of the lessor as herein stated, provided the cost of all repairs, alterations, fixtures and improvements in excess of $300 shall be borne and paid for by lessee. The said lessee in making changes, alterations or improvements costing less than $300 shall keep an account of the cost of same and shall be entitled to a monthly credit of $5 to be taken from monthly rent of $35 until said improvements paid as set out above at the rate of $5 per month out of the monthly rental until said lessee is reimbursed for the alterations and improvements for which he has paid not exceeding $300 in total cash. The lessor is to receive at no time a monthly rent of not less than $30 in advance, and, after such improvements as are made are paid for in the above manner by the lessor, he shall receive a monthly cash rental of $35 instead of $30.

"It is mutually agreed and understood that should the lessor dispossess the lessee at any time for any cause then the said lessor shall reimburse the lessee for the amount he has spent in improvements and fixtures as above set out and for which he may not have been fully paid at the agreed rate of $5 per month. It is also fur-

ther agreed that should the lessee for any cause abandon or give up on his own accord this lease, then said lessee shall not be entitled to the reimbursement that he has not received at the rate of $5 per month in the manner above set out at the time he abandons or give up this lease."

The complaint based upon this contract alleges that the lease contract was duly recorded. That Cain had sold and conveyed the property to Hysmith, but before doing so had tendered to Mills the sum expended on improvements, less the portion that had been discharged by the monthly credits of $5 provided by the contract.

A demurrer to the complaint was sustained, and this appeal is from that order.

To properly construe this contract, we should get the perspective of the parties who made it as shown by its recitals. And it thus appears that Mills desired to lease the building, provided he was allowed to "make such repairs to said building and add such fixtures as he may desire, and the same shall be made at the expense of the lessor as herein stated, provided the cost of all repairs, alterations, fixtures and improvements in excess of $300 shall be borne and paid for by the lessee." In other words, Mills was allowed to make as extensive repairs, etc., as he pleased, provided only $300 of the cost should be charged to Cain. This $300 could be discharged or repaid only by occupancy with a credit on that account of $5 per month, so that sixty months, or five years, would be required to discharge the full amount of the repairs, etc., for which Cain agreed to allow credit if repairs, etc., so extensive were made.

Having spent the $300 to adapt the building to his uses, Mills would forfeit $5 for each month he failed to occupy the building for the time necessary to repay himself for his repairs, etc. On the other hand, Cain agreed that if he should dispossess Mills at any time for any cause he would "reimburse the said lessee for the amount he has spent in improvements and fixtures as above set out and for which he may not have been fully paid at the agreed rate of $5 per'month."

We think this language last quoted was not intended to create a tenancy from month to month, and did not give Cain the right to terminate the contract at his pleasure. We think the parties intended a lease not exceeding five years, the time to be determined by the value of the repairs, etc., made by Mills, but not exceeding $300. The very size of this amount as compared with the cash monthly rental to be paid, towit, $30, confirms us in this view. It is unlikely that Mills would have agreed to expend so large a sum when his tenancy might be terminated at any time after thirty days' notice, and especially is this true when it is remembered that he would forfeit his expenditures if he ceased to occupy the building, and we conclude that the provision requiring Cain to reimburse Mills if, for any cause, he should dispossess him was inserted for Mills' protection, and not for the purpose of giving Cain the right to terminate the contract at his pleasure after thirty days' notice.

This was the construction of the contract given by the court below, and the judgment based on that construction is affirmed.

McCulloch, C. J., (dissenting). The rental contact does not contain an express provision specifying a definite term. Presumably, the parties were both unwilling to bind themselves to a fixed term or to any term of rental at all, except by the month and from month to month. But it is contended that the privilege granted to a lessee to make repairs and improvements and to deduct $5 per month from the rents until reimbursed for his outlay in that respect constituted an implied agreement for a term of sufficient length to afford the lessee opportunity to obtain reimbursement. This implication arises, if at all, solely from the presumption that the parties intended that the lessee should occupy the premises long enough to obtain reimbursement by deductions from the monthly rental. But they wrote into the contract in express words the terms on which the lessee was to obtain reimbursement, and no presumption should be indulged as to

any other intention of the parties. The concluding part of the contract reads as follows:

"It is mutually agreed and understood that should the lessor dispossess the lessee at any time for any cause then the said lessor shall reimburse the lessee for the amount he has spent in improvements and fixtures as above set out and for which he may not have been fully paid at the agreed rate of $5 per month. It is also further agreed that should the lessee for any cause abandon or give up on his own accord this lease, then said lessee shall not be entitled to the reimbursement that he has not received at the rate of $5 per month in the manner above set out at the time he abandons or gives up this lease."

This means that if the lessor, for any cause or reason, should dispossess the lessee he must reimburse the latter for his outlay in making repairs and improvements; but, on the other hand, if the lessee voluntarily quits for any cause or reason, he loses his opportunity to obtain reimbursement. It is plain from the language of the contract that the lessor could terminate the lease at any time by reimbursing the lessee, and this affords complete protection to the latter. The lessee was not compelled under the contract to make repairs or improvements. It was merely his privilege to do so and the contract itself set the limits on his right to reimbursement, as well as the method of obtaining it. A peculiar feature of the contact, if the interpretation of the majority be accepted as correct, is that the lessee may at any time extend the term of the contract for a period of five years by making repairs and improvements up to the specified maximum cost. It will be observed that the contract does not provide a time within which the repairs and improvements are to be made. It merely provides that the monthly rental of $35 shall be paid in cash until the repairs and improvements are made, and after they are made the sum of $5 shall be credited each month. According to this interpretation, the lessee would have the right at any time while in possession under the lease to

make the repairs and extend the term. Therefore, it is difficult to see how the court can find that the parties had in contemplation a lease for a period of five years. The court's interpretation is, therefore, out of harmony with the whole scheme provided in the contract, which was to leave the term indefinite and to extend to the lessee the privilege of making repairs and improvements, and to give the lessor the right to terminate the contract at any time by reimbursing the lessee.

Mr. Justice Wood joins in this dissent.